UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STENA DRILLMAX I (HUNGARY) KFT | § § § § § | |
| Plaintiff | § | |
| v. | § | C.A. NO. _____ |
| | § | |
| MARINOR ASSOCIATES INC., CAMERON IRON WORKS, INC., CAMERON INTERNATIONAL CORPORATION, and CAMERON DOES 1-10 | § § § § § § | |
| Defendants | § § § | |

## COMPLAINT

NOW COMES Stena Drillmax I (Hungary) KFT ("Plaintiff" or "Stena") and files this Complaint against Marinor Associates Inc. ("Marinor"), Cameron Iron Works, Inc. ("Cameron Iron Works"), Cameron International Corporation ("Cameron International"); and Cameron Does 1-10 (Cameron Iron Works, Cameron International, and Cameron Does 1-10 collectively "Cameron"; Marinor and Cameron collectively "Defendants") and would show as follows:

### I. The Parties

1. Plaintiff, Stena Drillmax I (Hungary) KFT is a company incorporated in Hungary with its principal place of business in Hungary and is thus a citizen of a foreign state within the meaning of 28 U.S.C. §§1332(a)(2) and (c)(1).

2. Defendant, Marinor Associates, Inc. ("Marinor") is a Delaware corporation with its principal place of business in Houston, Texas. Thus, Marinor is a citizen of both Delaware and Texas. Marinor may be served through its authorized agent for service of process as follows: Timothy D. Mercer, 911 Bunker Hill, Suite 220, Houston, Texas 77024.

3. Cameron Iron Works, Inc. ("Cameron Iron Works") was/is a Texas corporation with its principal place of business in Houston, Texas. Thus, Cameron Iron Works is a citizen of Texas. Cameron Iron Works may be served through its authorized agent for service of process as follows: CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201.

4. Cameron International Corporation, trading (among other names) as Cameron Drilling Systems, ("Cameron International") is a Delaware corporation with its principal place of business in Houston, Texas. Thus, Cameron International is a citizen of both Delaware and Texas. Cameron International may be served through its authorized agent for service of process as follows: CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201.

5. Cameron Does 1-10 are business entities, divisions, subsidiaries, or otherwise related to Cameron International Corporation that are legally responsible and liable for the acts, omissions and events referred to in this complaint because they manufactured, marketed, supplied, and/or sold the defective goods herein described. Cameron Does 1-10 are named herein by fictitious name because, although Plaintiff has information and basis for belief that Cameron Does 1-10 exist, Plaintiff does not know their true name and capacity. When Plaintiff learns Cameron Does 1-10 true names and capacity, Plaintiff will seek leave of this court to amend this complaint by inserting same herein and having service upon such defendants. Cameron Does 1-10 are citizens of one or more of the various States. At this time, Plaintiff believes that Cameron Does 1-10 may be served through Cameron International Corporation's

authorized agent for service of process as follows: CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201.

## II. Jurisdiction

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the matter is between a citizen of a foreign state and citizens of various States and the matter in controversy exceeds $75,000 exclusive of interest and costs.

7. In addition and/or in the alternative, the Court has admiralty or maritime jurisdiction in accordance with Article III, Section 2 of the United States Constitution, and pursuant to 28 U.S.C. § 1333.

8. In addition and/or in the alternative, the Court has jurisdiction pursuant to 43 U.S.C. § 1349(b)(1) because it arises out of and/or or in connection with operations conducted on the Outer Continental Shelf of the United States, involving exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf.

## III. Venue

9. Venue is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims at issue occurred in this District, and the Defendants reside in and/or may be found in this District and/or are subject to personal jurisdiction in this District.

10. Alternatively, venue is provided by 43 U.S.C. § 1349(b)(1) because at least one of the Defendants reside or may be found in this District.

11. Alternatively, pursuant to Fed. R. Civ. P. 82, no allegation of venue is required for an admiralty and maritime claim.

12. Alternatively, the parties agreed pursuant to a July 29, 2005 agreement that disputes that arise under such agreement (which is the subject of this action) shall be venued in this District.

### IV. Factual Background

13. On or about July 29, 2005, E-Max Limited (to later be renamed Stena Forth Limited) ("Stena Forth Limited") entered into that certain Equipment Supply Agreement with Marinor and Cameron (the "Equipment Supply Agreement") by which Stena Forth Limited agreed to purchase certain equipment to be incorporated into the MV "Stena Drillmax" (the "Vessel").

14. Pursuant to the Equipment Supply Agreement, Cameron and/or Marinor designed, manufactured, supplied, sold, marketed and/or installed a "LoadKing" riser system (consisting of all associated drilling pipe, and related appurtenances of any nature (the "LoadKing riser")) for and into the Vessel.

15. This action arises from the failure due to corrosion of certain carbon steel components of the LoadKing riser. The LoadKing riser failed due to galvanic corrosion as a result of poor design and/or manufacture regarding the relationship between the duplex steel pipes and the carbon steel elements as well as poor coating quality of some of the riser elements.

16. Defendants were notified of their responsibility for the damages incurred by the Plaintiff as a result of the corrosion but the Defendants have failed to respond in any way to the Plaintiff.

17. On or about July 29, 2005, as a supplementation to the Equipment Supply Agreement, Stena Forth Limited, Marinor and Samsung Heavy Industries Co., Ltd. entered into

that certain Novation Agreement by which the rights and obligations of the Equipment Supply Agreement owed to Stena Forth Limited were transferred by Novation from Stena Forth Limited to Samsung Heavy Industries Co., Ltd. except with the reservation of certain rights against Marinor and Cameron. These rights included but were not limited to all rights under sections 8 ("Warranties") and section 4 of the "Fundamental Terms and Conditions" ("Warranty Term") to the Equipment Supply Agreement.

18. On or about February 13, 2008, Stena Forth Limited (formerly E-Max Limited) assigned all of its rights reserved in the Novation Agreement to Plaintiff ("Assignment").

19. On or after September 1, 2007, the LoadKing riser was delivered to Plaintiff and incorporated in the Vessel.

20. When put to use on or about March 18, 2008, the LoadKing riser was subsequently first examined on July 16, 2008, at the conclusion of drilling operations offshore Brazil, when examined extensive corrosion was first observed.

21. The Vessel was then moved to the Gulf of Mexico on or about August 23, 2008. During transit, arrangements were made for replacement parts to be rented and shipped to the Gulf of Mexico.

22. The same corrosion problem was observed after the Vessel completed its operations in the Gulf of Mexico on February 2, 2009.

23. Plaintiff advised the Defendants immediately of the problems being encountered and the parties set out to investigate the cause of the corrosion. In the meantime, because it was under contractual obligations with its customers and in order to mitigate its damages, Plaintiff

both set out to repair the corroded material and secure a supply of rental pipe in order to continue to provide the services it was contractually bound to supply.

### V. Discovery Rule

24. Plaintiff exercised reasonable diligence in discovering the observed corrosion such that Plaintiff could not have discovered such corrosion before July 16, 2008 and, as a result, any applicable period of limitations was equitably tolled.

25. The contractual terms that were assigned to Plaintiff pursuant to the Assignment warranted the goods incorporated into the Vessel, including the LoadKing riser, for a period of the earlier of (1) 12 months from the date of first use or date of installation or (2) 18 months from the date of ex-work delivery or shipment, with such periods extending beyond July 16, 2008.

### VI. Plaintiff's Damages

26. As a result of the corrosion, Plaintiff has sustained millions of dollars of damages including, but not limited to, those for the recovery, removal and abandonment of the damaged portions of the LoadKing riser; the cost of repair and replacement of the damaged portions of the LoadKing riser including extensive transportation costs; and further damages incident to the loss of use, consequential and incidental damages in the amount to be proven at trial.

27. Plaintiff reserves the right to further specify and supplement its damage claims to include all additional losses caused by Defendants once such losses have been fully determined.

### VII. Causes of Action

#### First Cause of Action – Breach of Express Warranty

28. Plaintiff incorporates by reference paragraphs 1 through 27 above.

29. Pursuant to sections 8 ("Warranties") and section 4 of the "Fundamental Terms and Conditions" ("Warranty Term") of the Equipment Supply Agreement and other

- 6 -
PD.6240783.2

documentation provided, Marinor made certain express warranties to Plaintiff, including that the LoadKing riser was fit for the purposes specified and would be free from defect.

30. Pursuant to sections 8 ("Warranties") and section 4 of the "Fundamental Terms and Conditions" ("Warranty Term") of the Equipment Supply Agreement and other documentation provided, Cameron made certain express warranties to Plaintiff, including that the LoadKing riser was fit for the purposes specified and would be free from defect.

31. Contrary to these express warranties, the Loadking riser was not free from defects when used in the service and within the pressure range for which Plaintiff advised Defendants such riser was needed.

32. Such breach of express warranty caused the damages and losses described herein.

33. Defendants' breach of the express warranties proximately caused Plaintiff to suffer the damages described herein.

34. Defendants failed to repair or replace the defective LoadKing riser within a reasonable time, thereby depriving Plaintiff of the substantial value of the bargain.

35. As such, any limitations on recovery contained within the express warranties of the Equipment Supply Agreement failed of their essential purpose and, as a result, such limitations do not apply pursuant to *inter alia* Texas Business and Commercial Code § 2.719(b). Plaintiff according is entitled to general remedies afforded by law, including but not limited to its incidental and consequential damages.

**Second Cause of Action - Breach of Implied Warranty**

36. Plaintiff incorporates by reference paragraphs 1 through 35 above.

37. Defendants placed the LoadKing riser into the stream of commerce, thereby representing and impliedly warranting to the public generally, and specifically to Plaintiff that the riser was fit for the intended application of offshore drilling and incorporation into the Vessel.

38. The LoadKing riser failed and/or malfunctioned when put to its intended use, under ordinary and foreseeable sea conditions and in an ordinary and foreseeable manner, and caused the damages and losses described herein.

39. Defendants' breach of warranty proximately caused Plaintiff to suffer the damages described herein.

### Third Cause of Action – Breach of Contract

40. Plaintiff incorporates by reference paragraphs 1 through 39 above.

41. Defendants contracted with Plaintiff to supply a LoadKing riser fit for deep water drilling in places throughout the world.

42. The LoadKing riser sold to Plaintiff pursuant to such contract was not fit for deep water drilling in placed throughout the world.

43. As such, Defendants materially breached the terms of the contracts, thereby, as a direct and proximate result of Defendants' breach, Plaintiff suffered the damages described herein, including reasonable attorneys' fees.

44. Plaintiff has met any required conditions precedent.

45. Plaintiff has performed its obligations under the contract, Defendants have not.

### Fourth Cause of Action – Products Liability

46. Plaintiff incorporates by reference paragraphs 1 through 45 above.

47. At the time the LoadKing riser was manufactured and sold, and when it left Defendants' custody and control, the LoadKing riser was defective, unsafe for its intended purposes, and unreasonably dangerous in construction and composition when put to its reasonably anticipated use. Further the LoadKing riser did not conform to the express and/or implied warranties made by Defendants.

48. The LoadKing riser was expected to and did reach Plaintiff as the consumer and/or user without substantial change in the condition in which it was manufactured, designed, sold, and delivered.

49. In addition and/or in the alternative, the LoadKing riser deviated in a material way from the specifications or performance standards for it and/or from similar and/or substantially identical riser systems designed, manufactured, or marketed and supplied by Defendants.

50. In addition and/or in the alternative, the LoadKing riser was defectively manufactured, and/or marketed so as to render it unreasonably dangerous to Plaintiff. In particular, it exposed Plaintiff to loss of and/or damage to its vessel and/or its offshore oil and gas operations.

51. In addition and/or in the alternative, the LoadKing riser was defective and unreasonably dangerous because there was no warning that it would corrode and become useless. Defendants' failure to give adequate warnings of the danger of the riser, which dangers were known and/or should have been known by Defendants through the application of reasonably developed human skill and foresight, and/or Defendants' failure to provide adequate warnings to avoid such dangers, rendered the riser unreasonably dangerous.

52. In addition and/or in the further alternative, the LoadKing riser did not conform to express and implied warranties made by Defendants. Those express and implied warranties induced Plaintiff to use the LoadKing riser and/or induced Plaint to contract for the LoadKing riser and the Vessel. The damages to Plaintiff were proximately caused by Defendants' breach of those express and implied warranties.

53. In addition and/or in the further alternative, by virtue of its undertakings and activities and the risks of injury involved and inherent therein, Defendants had a legal duty to use due care, competence, skill, and reasonable caution under the circumstances, equivalent to that employed by a reasonable and prudent person, in designing, manufacturing, marketing and/or supplying the LoadKing riser. Defendants breached that duty when, though their negligence, imprudence, and want of skill, manufactured, marketed and/or supplied the unreasonably dangerous and/or defective LoadKing riser that was not fit for its intended purposes, and which failed when put to its intended use.

54. Defendants' acts or omission, breach of duty, negligence, gross negligence, fault, and want of skill proximately caused Plaintiff to suffer the damages described herein.

55. In addition and/or in the alternative, after manufacturing, marketing and/or supplying the LoadKing riser, Defendants knew or reasonably should have known of the defective and unreasonably dangerous defects and flaws in the riser, yet failed to warn Plaintiff of such defects and the unreasonably dangerous condition of the LoadKing riser.

56. Defendants unreasonably dangerous manufacture of the defective LoadKing riser and failure to warn of such defect, in whole or in part, caused damages to the Plaintiff.

## Fifth Cause of Action – Negligence

57. Plaintiff incorporates by reference the foregoing paragraphs 1 through 56.

58. In the ordinary course of its business, Defendants manufactured, sold, supplied and/or delivered the defective LoadKing riser. Defendants had a duty to exercise reasonable care, competence, and skill and among other things (a) manufacturing, inspecting, marketing, selling, delivering and/or supplying the LoadKing riser, (b) detecting and remedying any inadequacies, deficiencies, and defects, and (c) warning Plaintiff of any potential deficiencies, flaws and/or defects in the LoadKing riser.

59. Defendants breached their duties by failing to exercise reasonable care, competence, and skill in manufacturing, inspecting, marketing, selling, delivering and/or supplying the LoadKing riser by (a) manufacturing and/or selling a defective riser, (b) failing to remedy the inadequacies, deficiencies, and/or defects of the riser, and (c) concealing the inadequacies, deficiencies, and/or defects in the riser.

60. Defendants breach of their duties proximately caused Plaintiff to suffer the damages prayed for herein.

## VI. Damages

61. Plaintiff incorporates by reference the foregoing paragraphs 1 through 60.

62. As a direct proximate, and foreseeable result of the acts and omissions of Defendants described above, Plaintiff has incurred millions of dollars of damages (and will continue to incur significant damages) including, but not limited to, those for the recovery, removal and abandonment of the damaged portions of the LoadKing riser, including significant transportation costs; the cost of repair and replacement of the damaged portions of the LoadKing

riser; and further damages incident to the loss of use, consequential and incidental damages in the amount to be proven at trial.

**WHEREFORE**, Plaintiff, Stena Drillmax I (Hungary) KFT, prays that Defendants, Marinor Associates Inc., Cameron Iron Works, Cameron International Corporation, and Cameron Does 1-10, be summoned to appear and answer in this suit, and that after due proceedings the Court render judgment against Defendants and in favor of Plaintiff for its actual damages, pre-judgment and post-judgment interest, costs of court, attorneys' fees, and any such other and further relief, at law or in equity, to which it may be entitled, including sufficient time to discover the true identity of Cameron Does 1-10 and amend its complaint to add them as party defendants.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: s/ Claude L. Stuart III
    Claude L. Stuart III, duly designated
    Attorney-In-Charge pursuant to LR 11.1
    Texas Bar No. 19426620
    Federal ID No. 13824

    Michael E. Carrer
    Texas Bar No. 24073391
    S.D. Tex. No. 1385117

    700 Louisiana, Suite 2600
    Houston, Texas 77002
    Telephone (713) 626-1386
    Facsimile (713) 626-1388
    **ATTORNEYS FOR PLAINTIFF**